UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:

Allinger Properties, LLC            Chapter 11
                                             Case No. 12-31397
           Debtor                   Honorable Daniel Opperman
_____/


**AMENDED COMBINED PLAN AND DISCLOSURE STATEMENT OF**
**ALLINGER PROPERTIES, LLC.**
**Dated: October 22, 2012**


Prepared by
Peter T. Mooney, Esq. (P47012)
Simen, Figura & Parker, PLC.
5206 Gateway Centre, Ste 200
Flint, MI 48507
810-235-9000
Email: pmooney@sfplaw.com

# CHAPTER 11 REORGANIZATION FILING

On March 30, 2012, Allinger Properties, LLC. ("Allinger" or "Debtor"), filed a Chapter 11 bankruptcy in the United States Bankruptcy Court for the Eastern District. The case was assigned to the Honorable Daniel Opperman.

Upon filing the Petition, Debtor became a "Debtor-in-Possession" as that term is defined in the Code. Debtor is represented by the firm of Simen, Figura & Parker, P.L.C. ("Debtor's attorney").

Debtor is a limited liability company that owns three mobile home parks.

A. <u>Annual Revenue and Management</u>

Debtor's gross income in 2012 prior to filing was approximately $180,000.00. In 2011, Debtor grossed $750,000.00 and in 2010 Debtor grossed $300,000.00. Debtor does not yet know its year to date revenue for this year. Debtor's business is managed by its principal member – Amos Allinger.

B <u>Insider Transactions (Transfers from Debtor to Insider)</u>

Debtor has no insider transfers that are reportable in this Plan.

C. <u>Legal Relationships</u>

None.

# DESCRIPTION OF THE DEBTOR AND ITS PRINCIPALS

A. <u>Debtor's Business</u>.

Debtor operates three mobile home parks – Dutch Village, Ambassador Estates, and American Estates. Debtor has consented to relief from stay as to the Ambassador Estates and American Estates parks.

B. <u>Debtor's Principals</u>.

Debtor's principal is Amos Allinger.

C. <u>Principals' Relationship with Debtor.</u>

None other than his status as a member and principal.

# FACTORS CAUSING THE CHAPTER 11

In the years prior to the bankruptcy, Debtor's principal sold two of the parks under a sales/land contract to individuals who were unable to properly manage those properties. Upon getting those properties back from the purchasers, Debtor has struggled to maintain Ambassador and/or American on a profitable basis.

## POST PETITION EVENTS OF SIGNIFICANCE

Since the filing of the Chapter 11 petition, the following events and matters have occurred.

A.  Cost Cutting.

As noted above, Debtor has surrendered Ambassador. Debtor has also decided to surrender American Estates. Debtor is reducing the number of employees at Dutch Village.

B.  Post-petition obligations.

Debtor has paid all taxes and other operating charges due and owing, and incurred post-petition. Debtor has made adequate protection payments to CMH Homes.

C.  Transfers Post-Petition.

There have been no post-petition transfers to pre-petition unsecured (general or priority) creditors during the course of the bankruptcy.

D.  Litigation.

Debtor is currently engaged no litigation.

E.  Cash Collateral, Post-Petition Financing and Adequate Protection.

NA.

## LIQUIDATION ANALYSIS

Debtor's Liquidation Analysis is attached as Exhibit A.

Based upon the Liquidation Analysis set forth in Exhibit A, Debtor believes that liquidation would result in a substantially smaller distribution to every class of its creditors, including from secured creditors and payment of administrative claimants, then the proposed treatment set forth in the Plan. Debtor is certain that general unsecured creditors would not receive a distribution in a liquidating proceeding. The values placed thereon and summarized herein are the Debtor-in-Possession's best estimates of the current values of the property. These values might differ from values placed on the property at the time of the filing of the Petition for

Relief and the schedules.

## ADMINISTRATIVE PRIORITY CLAIMS

These are administrative claims are those claims entitled to payment under the provisions of the Bankruptcy Code as set forth in 11 U.S.C. §507.

At the time of preparation of this Combined Plan and Disclosure Statement, it appeared that these claims will consist of the following:

| Entity | Amount | Priority Statute |
|---|---|---|
| Simen, Figura & Parker, P.L.C. | $13,000.00 (approx. less amounts already paid) | 11 U.S.C. §507(a)(1) |

## SECURED CLAIMS

Debtor's secured claims consist of mortgages on its parks, and tax liens..

## PRIORITY UNSECURED CLAIMS

Debtor owes secured obligations to the State of Michigan, Genesee County and Genesee Township. As noted below, Debtor's position is that the bulk of the County's claim is non-priority.

## NON-PRIORITY UNSECURED CLAIMS

Debtor has listed $952,000.00 in unsecured debt.

## GUARANTEED DEBT

The Debtor's principal, Amos Allinger, has guaranteed debt owed to CMH Parks, Inc.

## PLAN IMPLEMENTATION

A.  Financial

The Debtor incorporates by as Exhibit B hereto, and made a part of its disclosure statement, a spreadsheet summary of its Income Statements for the post-Chapter 11 period of April 2012 through June, 2012. These show the net income of the Debtor during the periods in question. Debtor notes that while the overall picture shows a net loss Debtor's plan calls for the surrender of two of the parks. Without these parks, which have been losing money, Debtor projects sufficient net income to make the required payments.

The Debtor has attached, Exhibit C, the Debtor's projection of forecasted income for 2012-2016. The financial projections are based on Debtor's belief that focusing its principal's attention primarily on the operation of Dutch Village he will be able substantially increase revenues. Dutch Village has 140 homes occupied, but 225 homes. Debtor believes that over tme significant number of these unoccupied homes can be rented out.

Because Debtor's plan involves substantially downsizing his operations and shedding significant expenses, Debtor's net income and expense for the post-petition and pre-bankruptcy periods are not indicative of its ability to satisfy its plan obligations. Currently, Debtor has seven employees in addition to the principal. Labor expenses eat up approximately two-thirds of Debtor's gross income. Amos Allinger believes that he can reach the net revenues required by reducing employees and if necessary his own compensation. The projections assume a generally stable environment and no significant change in competitive conditions.

The liquidation analysis set forth in Exhibit A and previously outlined in above, indicates that if the Debtor's assets were liquidated today, there would be insufficient assets available to satisfy priority unsecured creditors or pay any dividend to general unsecured creditors.

Prior to the bankruptcy being filed, Debtor's gross revenues for 2010 were $606,760, and gross expenses were $965,838.00. The largest expenses that year were interest on debt, $185,188, and repairs, $194,907. In 2009, the gross rents were 202,892 and expenses totaled $336,778. The largest categories of expenses in 2009 were interest, $83,227, utilities, $65,464, and repairs, $53,136.

The Debtor's sole principal, Amos Allinger, intends to remain with the business, but also anticipate that, to insure the success of the plan, he will likely have to accept less than their current salaries, and that is set forth in the projections. Debtor's principal has paid himself an annual salary of $82,000.00 in 2011 plus, that year, a draw against profits of approximately $50,000.00. In 2010, Mr. Allinger's personal income was entirely paid as draw against the business's profits and was approximately the same amount as his total income in 2011. Mr. Allinger forgo a draw in the future 2012 to facilitate the Debtor's ability to make required plan payments and anticipates that his income salary of 82,000.00 will not substantially adjusted upward during the course of the plan. Due to his consolidation of operations at Dutch Village, Mr. Allinger will need far fewer employees going forward.

B.     Tax Ramifications

Debtor will qualify for Discharge of Indebtedness pursuant to Sec. 108 of the Internal Revenue Code. All unpaid debts of Debtor will not be considered cancellation of debt income and thus not taxable. If Debtor has any tax attributes such as net operating losses carry forward, tax credits, capital losses carry forward or book value in remaining fixed assets, these attributes will be reduced accordingly to the debts discharged.

C.     Legal Requirements

5

Debtor believes that it has met all legal requirements that would permit this Court to consider this plan.

## OBJECTIONS TO CLAIMS

The Reorganized Debtor may file an objection to any Proof of Claim or unfilled Claim.

## VOTING PROCEDURES

Under Bankruptcy Code, the only classes entitled to vote to accept or reject a plan are classes of claims, or equity interest, impaired under the Plan. Accordingly, classes of claims or interests that are not impaired are not entitled to vote on the Plan.

Creditors that hold claims in more than one impaired class are entitled to vote separately in each class. Such a creditor will receive a separate ballot for all of its claims in each class (in accordance with the records of the Clerk of the Court) and should complete and sign each ballot separately. A creditor who asserts a claim in more than one class and who has not been provided with sufficient ballots may photocopy the ballot received and file multiple ballots.

Votes on the Plan will be counted only with respect to claims representing an actual claim held against the estate by such claimant: (a) listed on the Debtor's Schedules of Assets and Liabilities other than as disputed, contingent or un-liquidated or simply for "Notice" purposes; or (b) for which a proof of claim was filed on or before the bar date set by the Court for the filing of proofs of claim (except for certain claims expressly excluded from that bar date or which are allowed by Court order). Any vote by a holder of a claim will not be counted if such claim has been disallowed nor is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to 11 U.S.C. § 502 and F. R. Bankr. 3018.

Voting on the Plan by each holder of a claim or interest in an impaired class is important. After carefully reviewing the Plan and disclosure statement, each holder of such a claim or interest should vote on the enclosed Ballot either to accept or to reject the Plan, and then return the Ballot by mail as indicated on the Ballot by the deadline established by the Court.

Any Ballot that does not appropriately indicate acceptance or rejection of the Plan will not be counted. A Ballot that is not received by the deadline will not be counted. If a Ballot is damaged, lost or missing, a replacement Ballot may be obtained by sending a written request to Debtor's attorney. All creditors entitled to vote on the Plan may cast their ballots for or against the Plan by completing, dating, and signing the Ballot for Accepting or Rejecting the Plan (the "Ballot") provided by Debtor. The filing may be accomplished either in person or by mailing the Ballots to the address indicated on the Ballot which is to Peter T. Mooney, Esq., 5206 Gateway Centre, Ste 200, Flint, MI 48507.

The deadline to return ballots on the Plan, as well as file objections to final approval of the disclosure statement and objections to confirmation of the plan shall be set by the Court.

## ACCEPTANCE

The United States Bankruptcy Code ("Bankruptcy Code") defines acceptance of a Plan by an impaired class of claims as acceptance by the holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class that actually cast ballots. The Bankruptcy Code defines acceptance of a Plan by an impaired class of equity interests as acceptance by holders of at least two-thirds in number of the equity interests of that class that actually cast ballots. If no creditor or interest holder in an impaired class votes, then that class has not accepted the Plan.

## CONFIRMATION

11 U.S.C. § 1129(a) establishes conditions for the confirmation of a Plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the Chapter 11 process.

Among the several conditions for confirmation of a Plan under 11 U.S.C. § 1129(a) are these:

A.  Each class of impaired creditors and interest must accept the Plan, as described in the Acceptance section above.

B.  Either each holder of a claim or interest in a class must accept the Plan or the Plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Bankruptcy Code.

C.  If at least one class of impaired claims or interests accepts the Plan, the Court may confirm a Plan under the "cramdown" provisions of § 1129(b) of the Bankruptcy Code which permits the confirmation of a plan over the dissenting votes of certain creditors and equity interest holders. Cramdown under § 1129(b) of the Bankruptcy Code may not be affected if a class of unsecured claims rejects the Plan, unless:

    1.  The Plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

    2.  The holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan, on account of such junior claim or interest, any property.

## MODIFICATION

Debtor reserves the right to modify or withdraw the Plan any time before confirmation.

## EFFECT OF CONFIRMATION

If the Plan is confirmed by the Court:

A.  Its terms are binding on the Debtors, all creditors and other parties in interest, regardless of whether they have accepted the Plan.

B.  Except as provided in the plan:

    1. In the case of a <u>corporation</u> that is reorganizing and continuing business:
        a. All claims and interests will be discharged.
        b. Creditors and shareholders will be prohibited from asserting their claims against or interest in the debtor or its assets.

    2. In the case of a <u>corporation</u> that is liquidating and not continuing its business:
        a. Claims and interests will not be discharged.
        b. Creditors and shareholders will not be prohibited from asserting their claims against or interests in the debtor or its assets.

    3. In the case of an individual or husband and wife:
        a. Claims will be discharged, except as provided in 11 U.S.C. §§ 523 and 727(a).
        b. Creditors will be prohibited from asserting their claims except as to those debts which are not discharged or dischargeable under 11 U.S.C. §§ 523 and 727(a).

## PLAN OF REORGANIZATION

NOW COMES Debtor herein, Allinger Properties, L.L.C. and in accordance with the Bankruptcy Code, hereby proposes and files its Plan of Reorganization under Chapter 11 of the Bankruptcy Code as follows:

### ARTICLE I

### DEFINITIONS

A.  <u>Allowed Claim</u> shall mean a Claim (a) in respect of which a proof of claim has been filed with the Court within the period of limitation fixed by Bankruptcy Rules 3001-3005; (b) scheduled in the list of creditors prepared and filed with the Court pursuant to F.R. Bankr. P. 1007 and not listed as disputed, contingent or un-liquidated as to amount or simply for "Notice" purposes, in either case as to which no objection to the allowance thereof has been raised within any applicable period of limitation or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which

no appeal or certiorari proceeding is pending; (c) a claim deemed allowed by order of the Court.

B. <u>Allowed Interest</u> shall mean an Interest, (a) in respect of which a proof of claim has been filed with the Court within the period of limitation fixed by F.R. Bankr. P. 3001-3005, or (b) scheduled in the list of creditors prepared and filed with the Court pursuant to F.R. Bankr. P. 1007, and not listed as disputed, contingent or unliquidated as to amount, in either case as to which no objection to the allowance thereof has been raised with any applicable period of limitation, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

C. <u>Claim</u> shall have the meaning as set forth in 11 U.S.C. § 101 and include any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured.

D. <u>Allowed Priority Claim</u> shall mean the Allowed Claim of a creditor afforded priority status under 11 U.S.C. §507, which is not secured by lien, security interest or other charge against property of the estate, or subject to set off pursuant to 11 U.S.C. §553. This definition shall specifically include tax claims given priority status and treatment.

E. <u>Allowed Secured Claim</u> shall mean an Allowed Claim secured by a properly perfected lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to set off under 11 U.S.C. §553, to the extent of the value (determined in accordance with 11 U.S.C. §506(a)) of the interest of the holder of such Allowed Claim in the Debtor's interest in such property or to the extent of the amount subject to such set off, as the case may be.

F. <u>Allowed Unsecured Claim or Allowed General Unsecured Claims</u> shall mean the Allowed Claim of a creditor for goods or services to Debtor before Debtor's filing this Chapter 11 case, which is not secured by lien, security interest or other charge against property of the estate, or subject to set off pursuant to 11 U.S.C. §553. This definition may include the deficiency portion of an under-secured Allowed Secured Claim. This definition shall not include tax claims given priority status and treatment.

G. <u>Bankruptcy Code and/or Code</u> shall mean the United States Bankruptcy Code, 11 U.S.C. §101 et.seq., and any amendments thereto.

H. <u>Class</u> shall mean any class into which Allowed Claims are classified.

I. <u>Confirmation Date</u> shall mean the date upon which the Order of Confirmation or the Alternative Plan is entered by the Court.

J. <u>Court</u> shall mean the United States Bankruptcy Court for the state and district, in which

the Debtor's Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any court having competent jurisdiction to hear appeals or certiorari proceedings relating thereto.

K.     Debtor shall mean Allinger Properties, LLC. ("Allinger Properties") as the Debtor-in-Possession in this Chapter 11 case.

L.     Creditor shall mean any person or its assignee that holds a claim against the Debtor for debts, liabilities, or demand of whatever kind or character which arose prior to the Petition Date.

M.     Effective Date means that this Plan shall be effective on the eleventh (11th) day after the date of the Order confirming the Plan; provided, however, that no stay pending appeal of the Order of Confirmation has been granted. In the event such an appeal is filed and stay granted, this Plan shall be effective as of the date the Order of Confirmation becomes final and binding on all parties. Final Order shall mean an order or a judgment of the Court which has not been stayed and as to which order or judgment (or any revisions, modification or amendment thereof) the time to appeal or seek review or rehearing has expired.

N.     Person or Persons shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof or other entity.

O.     Petition Date shall mean the date on which Debtor filed a voluntary Chapter 11 Petition Plan shall mean this Chapter 11 Plan of Reorganization in its present form or as may hereafter be amended, modified, or supplemented in accordance with the terms hereof or in accordance with the Code.

P.     Pro Rata shall mean proportionately or according to a certain rate percentage or proportion based upon the whole of Allowed Claims in any given Class.

Q.     Reorganized Debtor shall mean Debtor after the Effective Date. Furthermore, to the extent the Debtor is referenced in a post-confirmation capacity, Debtor shall have the same meaning as the Reorganized Debtor.

R.     Rules shall mean the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Eastern District of Michigan.

# ARTICLE II

## ADMINISTRATIVE CREDITORS

The administrative expenses of the Debtor's Chapter 11 case allowed pursuant to 11 U.S.C. §503(b) shall be paid in full on or before the Effective Date unless otherwise ordered by the Court, in cash, or upon such other terms as may be agreed upon by the holder of such allowed expense or Allowed Claim and Debtor. Where required by the Code and upon approval by the Court, Debtor shall pay all administrative expenses on a current basis. These claims shall

not be impaired.

## ARTICLE III

## DESIGNATION OF CLASSES OF CLAIMS

Classes shall be set forth in accordance with their priority in the Code.

Each priority creditor which has filed a valid priority claim shall be separately classified in accordance with 11 U.S.C. §507.

A.  NON-VOTING CLAIMANTS:

Administrative Claims Pursuant to 11 USC §507(a)(1). These classes are described below and will consist of Debtor's attorney, the IRS, and the Office of the U.S. Trustee for any remaining fees and costs. I t will include Allowed Priority Claims, and all claims entitled to priority under 11 U.S.C. §507.

B.  VOTING CLASSES:

Debtor's plan will consist of the following 4 voting classes, which shall be described I more detail below where their respective treatment is set forth

Voting Class I – Holders of Fully Secured Claims. This class is made up of holders of claims that are fully secured based on their priority and the value of the underlying collateral. This category is made up of Dutch Village Mobile Home Park, Inc. and the Genesee County Treasurer, although Debtor intends to object to the County's claim for the reasons set forth below.

Voting Class II – Holders of Secured Claims consisting of claims to be bifurcated. This class will consist of Doerr and Doerr Profit Sharing, and the holders of mortgages on the American Estates and Ambassador Estates parks, First Place Bank and Malco, respectively, to the extent that they assert a deficiency following the surrender of those mobile home parks.

Voting Class III – General Unsecured Claims.

This category consists of Debtor's remaining unsecured debt.

To the extent permitted by applicable law, administrative claims shall also be permitted to vote within their respective classes.

C.  TREATMENT AND CLASSIFICATION OF CLAIMS, INTEREST, AND TREATMENT:

1.  Debtor's administrative claims are classified and treated as follows:

A. Taxing Authorities

This category consists of the Genesee County Treasurer, Genesee Township and the State of Michigan.

The Genesee County Treasurer has filed a secured claim in the amount of $1,025,674.61, which Debtor understands to be made up of property taxes and water/sewer charges. While Debtor acknowledges that this Court cannot subsequent itself for a Debtor's state law remedies in the case of an ad valorem tax under Section 505, Debtor has challenged the taxes in 2010 and 2011 in the Michigan tax tribunal and believes that the adjustments made during this process were not reflected in the County's claim, and that the claim should be reduced by $150,000.00. In addition, Debtor's principal has been in contact with the Genesee County and Township treasurers, respectively, concludes from conversations that approximately $600,000.00 of this charge are not ad valorem taxes, but relate to water and sewer charges that Debtor believes are excessive for a number of reasons set forth below. In addition, Debtor's principal has met with the Genesee County Drain Commissioner regarding a leak in an underground pipe on his property. The leak has been repaired, but Debtor believes that the charges relating to water/sewer are excessive by approximately $300,000.00. Debtor intends to file an objection to the County's claim. Also, there is a second water meter on the Dutch Village property, but no water use occurs in connection with the 2nd meter. Debtor has requested on numerous occasions that the second meter be removed, and while no City or County official has disagreed that the meter should be removed this has not taken place. Debtor has been charged $700.00 per month in the connection with the additional meter for the last five years, or $42,000.00 total. If Debtor's objection is granted, Debtor anticipates the County's claim will be reduced by $492,000.00 to $533,000.00.

Similarly, Genesee Township has filed a secured claim as to real property in the amount of $59,832.97. This claim appears to relate to a water charge incurred after filling of this case, and therefore this claim not be paid within this plan. To the extent that the County's includes any amounts that would granted priority under Section 507(a)(8)(B), that portion of the claim will be included within and satisfied as part of the County's allowed secured claim described below.

The State of Michigan Department of Treasury has priority a priority claim in the amount of $7,740.17. Debtor will satisfy this obligation by making equal monthly payments of $172.18 a month for 60 months.

B. Administrative Class Two -- Claims by Professionals

Simen, Figura & Parker, PLC, the attorneys for the Debtor, will have an administrative claim for legal services to be determined by this Court following the filing of a fee application by Debtor's counsel.

C. Administrative Class Three – The United States Trustee

The United States Trustee's Office will have an administrative claim for any unpaid fees

due and owing through the course of administration. The Reorganized Debtor is obligated to pay quarterly fees to the United States Trustee until the Chapter 11 case has been converted, dismissed or closed by the Court, pursuant to 28 U.S.C. § 1930 (a)(6).

2.  Treatment of Voting Classes

The treatment of each class of claims is described below.

A.  Voting Class I – Holders of Secured Claims To Be Paid in Full.

Genesee County's secured claim pursuant to Section 506 of the Bankruptcy Code falls in this category with first priority pursuant to statute. However, Debtor believes that the County's claim should be $533,000.00 and will file an objection based on the reasons set forth in this Plan. Debtor proposes to pay Genesee County $5,000.00 per month for 12 months, $7,500 per month for the 12 months, and $10,585.66 for the remaining 48 months, which Debtor calculates will satisfy this claim at an annual interest rate of 7 percent. Upon payment of these sums Debtor will be entitled to a release of any and all tax liens for pre-petition obligations.

Dutch Village Mobile Home Park, Inc. will be paid its entire claim in step payments over 72 months. Debtor proposes to pay Dutch Village $5,000.00 per month for 12 months, $7,500 per month for the 12 months, and $9,950.06 for the remaining 48 months, which Debtor calculates will satisfy this claim at an annual interest rate of 7 percent. Upon payment of these sums Debtor will be entitled to a discharge of mortgage.

This class shall be impaired.

B.  Voting Class II – – Holders of Secured Claims consisting of claims to be bifurcated

Debtor is surrendering the Ambassador Estate and American Estates parks. The lenders', Malco and First Place Bank, secured claims shall be satisfied by their ownership of the parks in question. These creditors shall have unsecured claims for any deficiency balance with shall be paid as part of class III.

This class shall be impaired.

C.  Voting Class III – General Unsecured Claims.

Debtor shall pay $1,000.00 a month to all unsecured claimants pro rata.

## ARTICLE IV

## EXECUTORY CONTRACTS

Debtor is a landlord to numerous tenants renting lots in its mobile home parks. Debtor by

13

this plan assigns its rights as landlord in connection the leases to its abandoned parks, American and Ambassador Estates, to its secured lender. Debtor assumes its obligations under its leases in connection with the Dutch Village park.

## ARTICLE V

## RETENTION OF JURISDICTION

The Court shall retain jurisdiction of the case until the Plan has been fully consummated for the purposes set forth below:

A. To allow and disallow claims not allowed or disallowed prior to confirmation.

B. To hear and determine any controversy pending as of the date of confirmation before this Court and for the purpose of granting any Injunction or any other relief (including damage awards) as may be necessary or desirable to effectuate the purposes of the Plan

C. To estimate claims pursuant to 11 U.S.C. §502(c), enter final orders on objections to claims and to determine the validity, priority, or extent of a lien or other interest in property under F.R.Bankr. P. 7001.

D. If requested by any interested party, to enter Orders allowing compensation to persons so entitled to receive compensation pursuant to the Bankruptcy Code.

E. To modify the Plan pursuant to provisions of 11 U.S.C. §1127.

F. For such other matters as may be set forth in the Order of Confirmation.

G. In the event an appeal is perfected from the Order Confirming Plan, to enter such Orders regarding the disbursement of funds under the Plan or other matters as may be necessary to protect the interests of the Reorganized Debtor and its creditors.

H. The classification of the claim of any creditor and the re-examination of the claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to a creditors Claim. The failure of the Debtor to object to, or to examine any Claim for the purposes of voting, shall not be deemed to be a waiver of the Debtor's right to object to or re-examine the Claim in whole or in part.

I. The determination or allowance of compensation to those persons so entitled to receive compensation for services rendered prior to the Confirmation Date pursuant to the Bankruptcy Code.

J. The determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, claims, controversies, disputes or conflicts, whether or not subject to an action pending as of the Confirmation Date, between the Debtor and any other party.

K.	The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in the Plan or in the order of confirmation as may be necessary to carry out the purposes and intent of the Plan.

L.	The enforcement and interpretation of the terms and conditions of this Plan.

M.	The entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor, Reorganized Debtor and any creditor.

N.	Determination of whether a default has occurred under this Plan, and the making of such orders as the Bankruptcy Court deems necessary to enforce the provisions of this Plan, including, but not limited to, ordering a modification of the Plan, and ordering the conversion of this Chapter 11 proceeding to a Chapter 7 proceeding.

O.	To hear and determine controversies brought under Chapter 5 of the Bankruptcy Code, including preference and fraudulent conveyances, and such claims arising pre-petition/pre-confirmation of which Debtor has retained standing post-confirmation.

P.	To hear any adversary proceedings pursued under F.R. Bankr. P. 7001(1) - (10).

Q.	To enter a final decree closing the Case.

## ARTICLE VI

## VESTING OF PROPERTY AND RETENTION OF OWNERSHIP BY PRINCIPALS

Except to the extent provided in the Plan or in the Order of the Court confirming the Plan, upon the Confirmation Date, Debtor shall be discharged and released from (i) any and all debts arising or incurred prior to the Confirmation Date, and (ii) any and all debts of the kind specified in section 502 (g), 502(h) or 502(i) of the Code.

Except to the extent provided in the Plan, upon Confirmation Date, Debtor shall be vested with title to all property of the estate and all claims or causes of action arising under the Code in favor of Debtor.

Debtor's principals shall retain their ownership of the stock of Debtor on the condition that over the course of the plan they invest no less than $10,000.00 into the Company.

Debtor reserves the right to institute litigation (or pursue rights in an administrative proceeding) for claims arising pre-petition/pre-confirmation. Any aforementioned claims set forth by Debtor should not be construed to limit any other potential causes of action arising pre-petition/preconfirmation which Debtor may bring post-confirmation against any other party. Debtor reserves his right under the Plan to commence any litigation (or pursue rights in an administrative proceeding) against any and all parties that it believes would result in a benefit to the Post-confirmation Reorganized Debtor.

# ARTICLE VII

## MODIFICATION OF PLAN

Modifications of the Plan may be proposed in writing by the Debtor at any time before the Confirmation Date, provided that such Plan, as modified, meets the requirements of 11 U.S.C. § 1122 and 11 U.S.C. § 1123 and the Debtor shall have complied with 11 U.S.C. § 1125.

Debtor may modify the Plan at any time after confirmation and before its substantial consummation, provided that such Plan, as modified, meets the requirements of 11 U.S.C. § 1122 and 11 U.S.C. § 1123 and the Court, after notice and a hearing, confirms such Plan as modified, under 11 U.S.C. § 1129, and the circumstances warrant such modification.

A holder of a claim or interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within the time fixed by the Court, such holder changes its previous acceptance or rejection.

## ARTICLE VIII

### EFFECTIVE DATE OF PLAN

A.	This Plan shall be effective on the eleventh (11th) day after the date of the Order confirming the Plan; provided, however, that no stay pending appeal of the Order of Confirmation has been granted. In the event such an appeal is filed and stay granted, this Plan shall be effective as of the date the Order of Confirmation becomes final and binding on all parties. Should an appeal be taken in this case, Debtor shall be required to seek a stay pending appeal.

B.	Confirmation of the Plan will make the Plan binding upon the Debtor, Creditors and other parties in interest, regardless of whether they have accepted the Plan. Such Creditors will be prohibited from receiving payment from or seeking recourse against the Debtor, except as expressly provided in the Plan or the confirmation order. In addition, confirmation of the Plan will enjoin such parties from pursuing any claim, liability, interest or right that arose prior to the Confirmation Date. Confirmation of the Plan will also operate as a discharge of all claims against and interests as set forth in 11 U.S.C. § 1141(d), except as otherwise provided in the Plan.

## ARTICLE IX

### COSTS AND EXPENSES INCURRED AND UNPAID, OBLIGATIONS OF THE DEBTOR IN POSSESSION

The Debtor and Reorganized Debtor shall pay (and be obligated for) all the costs and expenses of this Reorganization as allowed by the Court upon entry of the appropriate order so allowing said costs and expenses.

## ARTICLE X

### UNITED STATES TRUSTEE FEES

All United States Trustee fees due at the time of confirmation of this Plan shall be paid within ten (10) days of confirmation. As such, Debtor shall pay to the United States Trustee the appropriate sums required pursuant to 28 U.S.C. §1930(a)(6). After confirmation, and until the Case is closed by the Court, Debtor and the Reorganized Debtor shall pay all post-confirmation fees on all disbursements of the Debtor and the Reorganized Debtor, and shall follow all procedures of the United States Trustee for reporting and tracking such disbursements.

## ARTICLE XI

### MEANS FOR EXECUTION OF PLAN

The Debtor shall generate the funds necessary for the execution of this Plan through the earnings of the Reorganized Debtor.

## ARTICLE XII

## REMEDIES AND RIGHTS

Upon the failure of the Debtor to make any payment due on a secured claim which is not cured within thirty (30) days of the mailing of a written notice of default by the creditor to Debtor and Debtor's counsel, such creditor may exercise all rights and remedies available under non-bankruptcy law for the collection of its entire claim and/or seek appropriate relief in this Court.

Moreover, in the event of conversion of this Case to a Chapter 7 proceeding all property of the Debtor, Debtor-in-Possession, or Reorganized Debtor pursuant to Confirmation of the Plan of Reorganization and all property acquired by the Reorganized Debtor subsequent to plan confirmation shall be property of the Chapter 7 estate.

## ARTICLE XIII

## RESERVATION OF CLAIM OBJECTION RIGHTS

Debtor herein reserves the right to object to any filed claim for a period of sixty (60) days from the date the Order Confirming Plan of Reorganization is entered.

## ARTICLE XIV

## MANDATORY RETIREE PROVISION

This is not applicable to this case.

## ARTICLE XV

## MISCELLANEOUS

A.   In the event the holder of any Claim shall transfer such Claim after the Confirmation Date, it shall immediately advise the Debtor and Debtor's Counsel, in writing, of such transfer and the aforementioned parties shall be entitled to assume that no transfer of any Claim has been made by any holder unless and until it shall have received written notice of such transfer. Each transferee of any claim shall take such claim subject to the provisions of the Plan and any requests made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in the notice, the Debtor shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

B.   The rights and obligations of any entity or person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity or person.

C.  The making and delivery of any instruments of transfer to or from the Debtor pursuant to this Plan, including deeds and articles of transfer shall not be taxed under any law imposing a stamp, as provided in 11 U.S.C. §1146(c).

D.  Any services performed or expenses incurred by any professional on behalf of the Reorganized Debtor with respect to this Case or the Reorganized Debtor after the Confirmation Date, shall not be subject to the prior review and approval of the Court. After the Confirmation Date, no professional shall be required to disclose payments from the Reorganized Debtor to the Court or the United States Trustee. All fees and expenses arising after the Confirmation Date shall be billed directly to the Reorganized Debtor.

E.  Neither the Debtor, nor the Reorganized Debtor, is prohibited from leasing or purchasing real or personal property.

F.  A Claim is classified in a particular class only to the extent that the Claim qualifies within the description of the class and is classified in a different class to the extent the Claim qualifies within the description of that different class. If a Claim is acquired or transferred, the Claim will be placed in the class in which it would have been placed if it were owned or held by the original claimant or holder.

G. Except to the extent that the United States Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Michigan.

Unless otherwise instructed in writing, Notices to the Reorganized Debtor under this Plan shall be mailed to:

Counsel for the Reorganized Debtor:

Simen, Figura & Parker, PLC
Attn: Peter T. Mooney
5206 Gateway Centre, Ste 200
Flint, MI 48507

Reorganized Debtor:

Allinger Properties, LLC
7699 Silver Lake Road
Linden, MI 48451

| | |
|---|---|
| Proposed By: | Prepared By: |

Allinger Properties, LLC

<u>/s/ Amos Allinger</u>  
By: Amos Allinger  
Its Member/Manager

<u>/s/Peter T. Mooney</u>  
Peter T. Mooney (47012)  
Its Attorney  
5206 Gateway Centre, Ste 200  
Flint, MI 48507  
810-235-9000

20
12-31397-dof    Doc 86    Filed 10/23/12    Entered 10/23/12 11:12:08    Page 20 of 20